**VAN IDERSTINE COMPANY, a division of Darling Delaware Co., Inc., Plaintiff-Appellant,**

v.

**RGJ CONTRACTING CO., INC., and Michael Petrow, Defendants-Appellees.**

No. 548, Docket 72-2225.

United States Court of Appeals, Second Circuit.

Argued May 22, 1973.

Decided June 12, 1973.

Benjamin H. Siff, Thomas R. Newman, New York City (Greenhill & Speyer, New York City, on the brief), for appellant.

Morris Zweibel, Brooklyn, N. Y. (Grant & Helfenstein, Brooklyn, N. Y., on the brief), for appellee RGJ Contracting Co., Inc.

Arthur N. Seiff, New York City (Katz & Gantman, New York City, on the brief), for appellee Michael Petrow.

Before KAUFMAN, Chief Judge, and KILKENNY* and OAKES, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

On December 29, 1964, a fire gutted a five-story building owned by appellant, Van Iderstine Company, in Long Island City, New York. The structure was part of a complex of twenty-eight buildings used in Van Iderstine's business of rendering butchers' offal and manufacturing bone meal, poultry feed and bone glue. Van Iderstine subsequently brought this action against R. G. J. Contracting Company, a contractor hired by Van Iderstine to demolish the building in question in preparation for new construction, and Michael Petrow, a subcontractor engaged by R. G. J. to perform the job, to recover $980,000 in property damage allegedly caused by the defendants' negligence in setting the fire. A jury, after trial before the Hon. Orrin Judd in the Eastern District of New York, returned a verdict for the defendants. Thereafter, Judge Judd denied Van Iderstine's post-trial motion to set aside the verdict and for a new trial, and Van Iderstine appealed.

Appellant urges us to reverse the judgment below because, in his view, the verdict was contrary to the evidence, the trial judge erred in his charge to the jury in certain respects and the trial conduct of the attorney for defendant R. G. J. Contracting Company was so prejudicial to Van Iderstine as to require a new trial. We have carefully considered the briefs and the record of the trial and find no basis for disturbing the jury's verdict. Accordingly, we affirm.

We doubt whether we would have memorialized this case in a written opinion of the court were there not present in the record evidence of conduct by counsel so disturbing as to require some fur-

---

* United States Court of Appeals, Ninth Circuit, sitting by designation.

ther discussion. During our customary reading of the briefs and examination of the record in preparation for the argument of the appeal we discovered a pattern of behavior by several lawyers who participated at trial that was shocking, unbecoming officers of the court and lacking in concern for professional integrity and responsibility. Since the courts must never provide a sanctuary for such gross misconduct as was demonstrated in this case we shall have something to say about the events at the trial.

█ We note initially that had more than an insubstantial portion of counsels' intemperate behavior been brought to the attention of the jury, we would have had no restraint in ordering a new trial. The attentiveness of the district judge, however, spared the jury from conduct that we believe would have fatally infected the trial. Although it is our judgment that the verdict was untainted by the acrimony that occurred outside the jury's presence, that alone cannot excuse the untoward behavior of counsel.

Canon 7 of the Code of Professional Responsibility sets forth the elementary maxim that "A lawyer should represent a client zealously within the bounds of the law." Disciplinary Rule 7–106 (Trial Conduct) of the Canons, however, provides that

> (C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
>
> (6) Engage in undignified or discourteous conduct which is degrading to a tribunal.

Moreover, Ethical Consideration 7–37 provides:

> In adversary proceedings, clients are litigants and though ill feeling may exist between clients, such ill feeling should not influence a lawyer in his conduct, attitude or demeanor towards opposing lawyers. A lawyer should not make unfair or derogatory personal reference to opposing counsel. Haranguing and offensive tactics by lawyers interfere with the orderly administration of justice and have no proper place in our legal system.

With this backdrop, we turn to a discussion of several examples of the conduct we have found particularly offensive.[1]

During the direct testimony of Daniel Roff, vice-president of R.G.J., Mr. Mangiatordi, counsel for defendant R.G.J., questioned the witness on the relationship between R.G.J. and defendant Petrow. The following colloquy took place:

Q. When Petrow was contacted— in your contacting Petrow, how did this come about as far as Van Iderstine was concerned?

Did you go into the full set of negotiations with respect to the operation of the demolition, et cetera?

A. I brought Mike Petrow in to do the demolition. From there on, Mr. Goonan [Van Iderstine's plant manager] knew just what he was going to do with his equipment and I had no further—

Mr. Greenspan [counsel for Van Iderstine]: I object to that. The contract speaks for itself.

Mr. Mangiatordi: It's not a contract.

The Court: What Goonan knew, the witness can say.

Mr. Mangiatordi: I object to the comment by counsel.

The Court: He was making an objection. I think his comment was in addition to his objection.

Mr. Mangiatordi: I believe he referred to something as a legal term that your Honor denied me to make a statement with respect to it.

---

1. Plaintiff Van Iderstine was represented at trial by Jerome Greenspan, Carl Kreisberg and Simon Greenhill, Esqs., of the firm of Greenhill & Speyer. Principal counsel for defendant R.G.J. Contracting Company was Frank Mangiatordi, Esq., of the firm of Grant & Helfenstein. We should note that Maley S. Cohen, Esq., of the firm of Katz & Gantman, who was the attorney for defendant Petrow, did not participate in the conduct we condemn.

The Court: Ask your next question.

Mr. Mangiatordi: He ought to refer to it as a Plaintiff's Exhibit.

May I approach the Bench for a minute, please?

The Court: All right.

(The following occurred at sidebar).

Mr. Mangiatordi: Mr. Greenhill [co-counsel for Van Iderstine] insists on making faces and showing exasperation from my questioning. I am going to ask that he discontinue or he be excluded from the courtroom.

Mr. Greenspan: Mr. Greenhill has been looking at some notes—

Mr. Mangiatordi: That's not true.

Mr. Greenspan: How can you say it's untrue. You have some nerve. You don't know what you are talking about.

Mr. Mangiatordi: Judge, if this continues—

The Court: The witness cannot tell what Mr. Goonan was trying to do. Let's continue.

The able trial judge unfortunately permitted himself to be drawn into the dispute between the attorneys. He was often interrupted discourteously and abused without reason by Mr. Mangiatordi, as the following testimony during plaintiff's cross-examination of Roff illustrates:

Q. [Mr. Greenspan] Isn't it true when you do demolition work and there is steel in the building—

Mr. Mangiatordi: I object to the question.

The Court: Overruled.

Q. Isn't it true when you do demolition work and you have steel in the building that you have to use a torch to cut it? .

Mr. Mangiatordi: I object to the question. I don't know what he's referring to when he uses the words "when you do demolition work." I object to the form of the question.

The Court: Overruled.

Mr. Mangiatordi: Is the word meant generally, Judge, did you, any person?

The Court: I think this is dealing with his experience as to demolition work generally.

The Witness: I don't have experience with demolition work. I couldn't answer that.

Q. You were a former fireman, were you not?

A. Yes, sir.

Q. In doing demolition work is it necessary to use a torch to cut steel?

Mr. Mangiatordi: I object to that.

The Court: He can answer that if he knows.

Mr. Mangiatordi: I can answer that question.

A. If you have steel and the steel is put together with bolts, you don't need a torch.

Mr. Greenspan: I move the answer be stricken.

The Court: No. I will let it stand.

Q. If you say it was put together with bolts, do you mean that you have to use a torch to cut them or do you mean that you—

A. No. You can use wrenches to take out bolts.

Q. Supposing the size of the metal is so large and they are not put together with bolts and you have to cut it, you have to split it, how would you cut it?

A. You would cut it with a torch.

Mr. Mangiatordi: I object to that. He's trying to make him an expert on that.

The Court: I let you make him an expert on fire. I will have an expert on demolition.

Mr. Mangiatordi: He was a fire marshal. He was an expert. He is not an expert on demolition and on cutting metals.

The Court: We had a statement—

Mr. Mangiatordi: Judge, I would like to go to the side bar again, if your Honor pleases.

The Court: We will take a short recess now. The jury go back to the jury room and don't discuss the case.

(Jury excused.)

Mr. Mangiatordi: Again at this time I have to sincerely ask for a mistrial, Judge.

The evident bias in this case that your Honor is projecting to this jury as against the defendants in this case, it's shocking. You are suggesting to these plaintiff's attorneys how to try their cases in the first instance. You are telling them what testimony to put in, what testimony to exclude. You are making suggestions to them as to whether or not the word "sub-contractor" should go into evidence as opposed to their intention to prove that there was a joint venture, and now you are trying to show—because this man was projected as being an expert in fire—that that automatically makes him an expert in welding and cutting and demolition and I take exception to that.

The Court: No. Because Mr. Greenspan had just put in a couple of statements about his having worked on demolition jobs before. You have a right to file a Certificate of Bias. Do it any time.

Mr. Mangiatordi: Judge, I am in the middle of trial and I don't get out of here until 6, 7 o'clock at night.

The Court: I don't keep you that long.

Mr. Mangiatordi: I am here at night. You may not know it, but I am here until 7 o'clock at night.

It's evident that what you are doing is really projecting to the jury and I ask you, please, in the interests of justice to give us an opportunity to present the case in a fair light and not project yourself into the case. I mean it sincerely.

The Court: You just get yourself too excited. That's why we have all these personalities that are result-ing in your accusing the other counsel of misconduct, too.

Mr. Mangiatordi: You are prejudicing the defendants here and I ask you, please, if there is a question pertaining to evidence, not to project yourself to show that what we are doing is erroneous or wrong or we are trying to hoodwink this jury. I think it's highly prejudicial.

(A recess was taken.)

The ultimate disservice to the advocate's role was exhibited during the direct examination of defendant Michael Petrow. The witness testified that he had seen lawyers for Van Iderstine at the fire site and they had identified themselves as fire marshals and inspectors. The record needs no embellishing:

Q. [Mr. Mangiatordi] Who did you see there at the premises?

A. [Mr. Petrow] The two fire marshals, the two fire inspectors.

Q. The gentleman sitting on the end and the gentleman with the eyeglasses in his mouth, they said they were fire marshals and inspectors?

A. And adjusters.

Mr. Cohen: Designate their name for the record, please.

Mr. Greenspan: Mr. Kreisberg [co-counsel for Van Iderstine] you saw there?

The Court: Did you see Mr. Kreisberg?

The Witness: Yes, sir.

Mr. Greenspan: When was this?

The Court: Mr. Mangiatordi is questioning.

Q. What did they represent themselves as being at the time you saw them there?

A. Fire inspectors, fire adjusters, or something of that nature.

Q. Did you see them there throughout the job after the fire had occurred?

A. Once, twice, sometimes three times a day; poking around here, poking around there. I'd run into them at the oddest places.

Q. Did you ever catch them in conversation with your men?

Mr. Greenspan: I object to that statement.

The Court: Sustained.

Q. Were your men on the job after the fire?

A. Yes, sir.

Q. Did you notice whether there was any conversation going on with your men and with these men?

A. Yes, sir.

Q. Did you have a conversation with them with respect to these conversations they were having with your men?

A. Yes, sir.

Q. And what did—

Mr. Mangiatordi: If you want to stare at me I'll put you on the stand next.

The Court: We'll take a recess.

The jury will go back to the jury room because we want to talk about the case.

(The jury left the courtroom.)

The Court: Mr. Mangiatordi, is there any other counsel available to try this case if I declare a mistrial?

Mr. Mangiatordi: No, sir. This case took a lot of preparation.

The Court: Don't spoil it by dealing in—

Mr. Greenhill: I think we have reached a point where a mistrial is necessary.

The Court: We will recess.

Mr. Greenhill: We have wasted your time and we wasted our time.

Mr. Mangiatordi: I except.

The Court: Do you think—

Mr. Greenhill: This man should be reported to the Federal Bar Association.

Mr. Mangiatordi: This man has been glaring at me all through the trial.

Mr. Greenhill: And I say there is perjury committed. This record should go to the District Attorney.

Mr. Kreisberg: And I want—

Mr. Greenhill: This should be referred to the District Attorney.

Mr. Kreisberg: I want to call this man an unmitigated liar and put my testimony on the record.

Mr. Greenhill: I want this testimony to go to the District Attorney. This is a disgrace.

Mr. Petrow: Two men of mine almost died.

Mr. Greenhill: You are a liar.

I'll say another thing. I want to say one more thing because it affects me.

Mr. Roth said on this stand he believes he saw me there the day of the fire. I was outside in the hall with his personal attorney and I said, "Mr. Roth, is that true?"

He said, "No. Don't you remember when I was there?"

He said, "Yes. When were you there Mr. Greenhill? I was there on December 31st."

That was the first time I saw him.

Mr. Cohen: Two days after the fire.

Mr. Kreisberg: But not the day of the fire as this man says. And I was sick in bed.

Mr. Petrow: I didn't say that you were there the day of the fire. I said the day after.

Mr. Greenhill: This record should go to the District Attorney's office.

Mr. Petrow: It should go because two men almost lost their lives. These men were with me twenty years, you know. Even though they work for me they are still my friends. There was arson involved here.

Mr. Greenhill: Listening for two weeks to wisecracks. Listening to the comic lawyer, listening to these—this man can't even try cases.

The Court: We are going to take a twenty-minute recess. Counsel can go to the court library on the fourth

floor to see if I have the power to grant a mistrial.

Mr. Mangiatordi: This case has been adjourned—if Mr. Greenhill doubts my competency, he is the person who was supposed to be trying this case, all of a sudden he asked for adjournments claiming that he was sick. Now, I asked your Honor in the course of this trial to ask this man to quit his tactics and doing this every time a question was asked and during all of my cross-examination, during my questioning, during this entire trial, and your Honor refused to admonish him.

The Court: I have only your word to believe it.

Mr. Mangiatordi: He's not denying it, either.

Now, you are talking about tactics. He should conduct himself as a lawyer.

Mr. Greenhill: I could be your father.

Mr. Mangiatordi: You could never be my father under any circumstances.

The Court: We'll take a short recess.

Mr. Mangiatordi: You couldn't clean my father's shoes.

The Court: We will take a twenty-minute recess.

Mr. Mangiatordi: You couldn't shine my father's shoes, you Goddamn bootblack.

Mr. Kreisberg: What did you say?

The Court: We will take a twenty-minute recess.

 Ordinarily, when a lawyer's misconduct is called to our attention, our reviewing task is made difficult because the cold trial transcript does not permit us easily to capture the mood of the trial. The pages of this record, however, virtually sizzle with misbehavior. We believe the depressing illustrations, just noted, of what passed for advocacy in this case sufficiently demonstrate the nature of the unruly proceedings below. Even Judge Judd's patient and perhaps overly tolerant attitude towards the attorneys' conduct ultimately had to give way. He was moved to observe finally that "In a bar as disciplined as the English bar, Mr. Mangiatordi would have been subject to public censure and perhaps suspension for the repeated and unfair criticisms of plaintiff's counsel." We do not believe any civilized legal system need tolerate behavior which makes a mockery of our adversary trial system. Civil litigation provides an opportunity for private parties to dispose of disputes in an orderly and disciplined fashion. But the open forum which our courts provide for conflict resolution is not, nor can it ever be, a license to slander and abuse one's adversary. Such conduct diminishes the integrity of an institution whose usefulness depends upon the respect in which it is held by the public, and by the lawyers who practice in it. Advocacy is an art in which the unrelenting pursuit of truth and the most thorough self-control must be delicately balanced. Lawyers, as officers of the court, must always be alert to the rule that zealous advocacy in behalf of a client can never excuse contumacious or disrespectful conduct. Counsel who abuse the adversary system and infect court proceedings with the tactics of street brawlers cast doubt upon their fitness as responsible advocates and betray a trust with which they are invested by the court and public.

The attorneys' conduct which we have noted reveals a total lack of self-discipline. Moreover, we believe Mr. Mangiatordi's behavior particularly merits censure. Since the district judge did not recommend initiation of disciplinary proceedings in this matter, we forebear from doing so ourselves. Similar conduct, however, will not be tolerated in the future and this opinion should serve as notice to that effect.